| | |
|---|---|
| UNITED STATES DISTRICT COURT<br>EASTERN DISTRICT OF NEW YORK | NOT FOR PUBLICATION |
| United States of America | MEMORANDUM & ORDER |
| – against – | 97-cr-672 (ERK) |
| Gurmeet Singh Dhinsa | |
| Defendant. | |

KORMAN, *J.*:

Petitioner Gurmeet Singh Dhinsa moves to vacate his conviction under 18 U.S.C. § 924(c) on the ground that one of the predicates for that conviction no longer qualifies as a crime of violence.

## BACKGROUND

The Second Circuit and I have previously detailed Dhinsa's crimes at length, and I need not fully recount them here. *United States v. Dhinsa*, 243 F.3d 635 (2d Cir. 2001) ("*Dhinsa I*"); *Dhinsa v. Krueger*, 238 F. Supp. 3d 421 (E.D.N.Y. 2017) ("*Dhinsa II*"), *vacated in part and remanded*, 917 F.3d 70 (2d Cir. 2019) ("*Dhinsa III*"). As relevant here, Dhinsa was "the self-professed leader of the 'Singh Enterprise,' a vast racketeering organization built around a chain of fifty-one gasoline stations that Dhinsa owned and operated throughout the New York City metropolitan area under the name 'Citygas.' Dhinsa installed 'pump-rigging' technology that overcharged consumers for gas, generating tens of millions of

1

dollars of excess revenues over a period of a decade. He protected the enterprise by bribing public officials, purchasing weapons, and threatening, kidnapping, or murdering individuals whom he viewed as threats to his operations." *Dhinsa III*, 917 F.3d at 74 (internal quotation omitted).

The convictions at issue here arise from the murder of Manmohan Singh, who worked at a Citygas station. "Numerous witnesses testified that throughout 1997, Manmohan[1] was actively searching for his brother, Kulwant, who had disappeared from a Citygas station in 1995. Manmohan suspected Dhinsa of kidnapping Kulwant or otherwise contributing to Kulwant's disappearance." *Dhinsa II*, 238 F. Supp. 3d at 424 (internal citation omitted). Dhinsa then paid a hitman, Marvin Dodson, to kill Manmohan because of Manmohan's cooperation with the police. *Id.* Dhinsa supplied Dodson with a gun. *Id.* "After accompanying Manmohan to an office area at the station under the pretext that he needed a can of oil, Dodson ordered Manmohan to kneel down near a bench and proceeded to fire two shots into the back of Manmohan's head, killing him." *Dhinsa I*, 243 F.3d at 644. The Second Circuit described the evidence against Dhinsa for his role in Manmohan's murder as "direct and overwhelming." *Id.* at 660.

---

[1]  "The majority of the people involved in this case share the same religious affiliation, which requires the men to adopt the last name 'Singh.' To avoid confusion, [I] will refer to [the petitioner] as Dhinsa and other persons by their first name." *Dhinsa I*, 243 F.3d at 642 n.1.

2

The jury convicted Dhinsa of several crimes relating to Manmohan's murder, including conspiracy to commit murder in aid of racketeering (Count 7), knowingly and intentionally murdering Manmohan in aid of racketeering (based on second-degree murder under New York Penal Law § 125.25) (Count 8), murder with the intent to prevent Manmohan from communicating with federal law enforcement (Count 9), and using a firearm during a crime of violence under 18 U.S.C. § 924(c) (Count 10). Superseding Indictment at 16–18, ECF No. 534, Ex. A; Judgment, ECF No. 440. The predicate crimes of violence underlying the conviction for Count 10 were the crimes charged in Counts 7, 8 and 9. *See* Superseding Indictment at 18. Counts 8, 9 and 10 were premised on accomplice liability. *See* ECF No. 528, Ex. at 6255–56, 6284, 6288–91.

In addition to the murder of Manmohan, Dhinsa was convicted of murdering, threatening to murder or conspiring to murder various other individuals, along with numerous other offenses. The Second Circuit affirmed most of the convictions, including all convictions on the counts arising out of the murder of Manmohan. *See Dhinsa III*, 917 F.3d at 75. Dhinsa is serving six concurrent life sentences, numerous lesser sentences running concurrent with the life sentences, and a sixty-month term on the § 924(c) conviction that runs consecutive to all other sentences. *Dhinsa II*, 238 F. Supp. 3d at 423.

Dhinsa now seeks to vacate his conviction under 18 U.S.C. § 924(c) on the ground that one of the predicates underlying that conviction—conspiracy to commit murder in aid of racketeering—no longer counts as a crime of violence following *United States v. Davis*, 139 S. Ct. 2319 (2019). The Second Circuit granted leave to file a successive § 2255 motion. It "acknowledge[d] that Petitioner's § 924(c) conviction might still be supported by a valid predicate, even if other predicates are no longer valid after . . . *Davis*." Mandate, ECF No. 524. The Court of Appeals concluded, however, that "the district court is better suited" to make that determination in the first instance. *Id.*

## DISCUSSION

"A prisoner in custody . . . claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States . . . may move the court which imposed the sentence to vacate, set aside, or correct the sentence." 28 U.S.C. § 2255(a). Although vacatur of the § 924(c) sentence would have no practical effect given Dhinsa's multiple life sentences, the Court of Appeals held that he nonetheless has standing to bring this challenge because vacatur would entitle him to the return of the special assessment for that conviction, even though Dhinsa's counsel "conceded that special assessments are a 'legal fiction' within the context of collateral consequences, and that Dhinsa has no

4

interest in actually obtaining a refund." *Dhinsa II*, 238 F. Supp. 3d at 431; *Dhinsa III*, 917 F.3d at 78–79.

Section 924(c) criminalizes carrying, brandishing or using a firearm during and in relation to any "crime of violence." A "crime of violence" is defined as a felony that (A) has as an element the use, attempted use, or threatened use of physical force against the person or property of another (the "elements" clause); or (B) by its nature, involves a substantial risk that physical force against the person or property of another may be used in the course of committing the offense (the "residual" clause). 18 U.S.C. § 924(c)(3). In *Davis*, the Supreme Court struck down the residual clause as unconstitutionally vague. 139 S. Ct. at 2336.

Courts apply the "categorical approach" in determining whether an offense is a crime of violence under the elements clause. *United States v. Hill*, 890 F.3d 51, 55 (2d Cir. 2018). Under the categorical approach, courts "evaluate whether the minimum criminal conduct necessary for conviction under a particular statute necessarily involves violence," and not the facts of the underlying crime. *United States v. Hendricks*, 921 F.3d 320, 327 (2d Cir. 2019) (internal quotation omitted). "If the statute of offense is 'divisible'—*i.e.*, it defines multiple separate crimes—we apply the 'modified categorical' approach and look at a limited class of documents from the record of conviction to determine what crime, with what elements, a

5

defendant was convicted of." *Gray v. United States*, --- F.3d ---, 2020 WL 6685302, at *2 (2d Cir. Nov. 13, 2020) (internal quotation omitted).

The U.S. Attorney concedes that Count 7—conspiracy to commit murder in aid of racketeering—does not qualify as a crime of violence under the elements clause. I agree with the U.S. Attorney, however, that Count 10 continues to be supported by a valid predicate. I have previously held that second-degree murder under New York Penal Law § 125.25—which underlies Count 8's charge of murder in aid of racketeering—is a crime of violence under the elements clause. *Rizzuto v. United States*, 2019 WL 3219156 (E.D.N.Y. July 17, 2019). As I explained, in determining whether a racketeering offense qualifies as a crime of violence, "I would look to the predicate offenses—here, murder—to determine whether a crime of violence is charged." *Id.* at *2 (internal quotation omitted). Section 125.25 is a divisible statute and, as in *Rizzuto*, it is clear from Dhinsa's indictment that he was charged under subsection (1), which criminalizes intentional murder. *Id.* at *3; Superseding Indictment at 17. Intentional murder necessarily involves the use of force and is therefore a crime of violence. *Rizzuto*, 2019 WL 3219156, at *3–4; *see also United States v. Medunjanin*, 2020 WL 5912323, at *4 (E.D.N.Y. Oct. 6, 2020); *Boykin v. United States*, 2020 WL 774293, at *7–8 (S.D.N.Y. Feb. 18, 2020). Similarly, Dhinsa's conviction for informant murder in Count 9 is a crime of

violence, because the relevant subsection likewise criminalizes intentional murder. *See* 18 U.S.C. § 1512(a)(1)(C); Superseding Indictment at 17–18.[2]

Dhinsa argues, however, that since his § 924(c) conviction was based on all of Counts 7 through 9, that conviction cannot stand because Count 7 is not a crime of violence. He is mistaken. "Courts in the Second Circuit have consistently held that a § 924(c) conviction may survive even when one of multiple predicates has been invalidated." *Medunjanin*, 2020 WL 5912323, at *6 (internal quotation omitted). Rather, "[t]he correct rule is that if a jury is instructed on both valid and invalid predicate offenses, the conviction stands if the verdict undoubtedly rests on a valid predicate." *Sessa v. United States*, 2020 WL 3451657, at *5 (E.D.N.Y. June 24, 2020) (internal quotation and alteration omitted); *see United States v. Walker*, 789 F. App'x 241, 244–45 (2d Cir. 2019) (upholding § 924(c) conviction because it "rested on convictions for both conspiracy and substantive Hobbs Act robbery as the predicate crimes of violence") (emphasis in original).

Here, there is no question that Dhinsa's § 924(c) conviction rested on valid predicates. As explained above, both Counts 8 and 9 are crimes of violence. The

---

[2] This analysis applies even though Dhinsa was convicted of Counts 8 and 9 under a conspiracy or aiding-and-abetting theory of liability. "A substantive conviction of a categorical crime of violence involving a firearm is a valid predicate for a § 924(c) conviction, regardless of what theory of liability it proceeds on." *Sessa v. United States*, 2020 WL 3451657, at *5 (E.D.N.Y. June 24, 2020) (internal citations omitted).

jury convicted Dhinsa of these crimes and of violating § 924(c) based on "direct and overwhelming evidence" of "Dhinsa's involvement in Manmohan's murder." *Dhinsa I*, 243 F.3d at 660. "When a jury is instructed on alternative theories of guilt and returns a verdict that may rest on a legally invalid theory, it is subject to harmless-error analysis." *Medunjanin*, 2020 WL 5912323, at *6 (citing *Skilling v. United States*, 561 U.S. 358, 414 (2010)). It is clear beyond any reasonable doubt that the jury would have convicted Dhinsa of violating § 924(c) had it been instructed that only Counts 8 and 9 were valid predicates. *See United States v. Erbo*, 2020 WL 6802946, at *3 (S.D.N.Y. Nov. 19, 2020) (upholding § 924(c) convictions "even in the absence of the conspiracy predicates" where defendant was convicted of substantive murder charges); *Sessa*, 2020 WL 3451657, at *5 ("No rational jury would return a verdict of guilty on a § 924(c) charge predicated on two conspiracies to commit murder with a firearm and the substantive offense of murder committed with a firearm, and not return the same verdict if predicated only on the murder committed with a firearm."). The notion that Dhinsa's conviction under § 924(c) was predicated *only* on a conspiracy to commit murder, but not on his role in intentionally committing that same murder, is absurd.

## CONCLUSION

Petitioner's motion to vacate is denied. I also decline to issue a certificate of appealability.

                                                    **SO ORDERED.**

                                        *Edward R. Korman*

Brooklyn, New York                               Edward R. Korman
November 30, 2020                              United States District Judge